Mr. Wessler, I understand you would like to reserve 2 minutes for rebuttal, is that right? Yes, Your Honor. Okay. Whenever you're ready, you may proceed. May it please the Court, Matthew Wessler for the appellant. For years, Lyft has offered rides to wheelchair users in New York City and other regions through what it calls access mode. Neither access mode nor Lyft's standard mode is perfect. Sometimes there are long waits and sometimes no driver is available. But even imperfect service is important for individuals with limited mobility. Lyft, however, has consistently refused to expand access mode from New York City to neighboring Westchester. And that's true even though hundreds of drivers with wheelchair-accessible vehicles, or WAVEs, are already in Westchester each month. Despite this, Lyft simply prohibits them from appearing on its app as WAVE drivers, prohibits users from requesting WAVEs, and won't employ strategies it has successfully employed elsewhere to boost WAVE access. The district court held that Title III doesn't require Lyft to modify what is effectively a blanket ban on WAVE access in Westchester. But it did so by disregarding the controlling burden shifting. I don't understand anything about a ban. It's just this is not a service they provide. Well, they do provide the service. It's just that they don't. They're not banning anybody from doing anything. They're just, they're not providing the access mode and the WAVEs. Among others, yes. That's kind of an odd way to say that Lyft is banning it. It sounds like they're prohibiting anybody else from doing it. It's just not a service that they're providing. Well, what they are doing is they are preventing the toggle button from being on or available for. Well, they're just not turning it on. Correct. They're not preventing it. That's kind of like, I mean, I don't know. Maybe it's just nominally. Yeah, maybe semantics. But when you say, you know, that they're banning anyone from requesting champagne in their Lyft, they're not banning it. It's just not a service they're affirmatively providing. So. I agree. Maybe it's semantics. Maybe semantics, Your Honor. But I think the point is that what the district, to reach its holding in this case, the district court disregarded what has been this Court's controlling burden-shifting framework that applies to discrimination cases like this one. And it also ignored the real-world way the proposed accommodations would have allowed disabled riders meaningful access to Lyft services. Let me just ask a preliminary question. I want to make sure that I understand the procedural posture here. We're here after a four-day trial, right? Yes, that's correct, Your Honor. And this was one where the judge, to the extent the judge made factual findings, those were viewable by this Court only for clear error. Correct. That's correct, Your Honor. So it's not a summary judgment like the last case where we have to construe, you know, all the facts in favor of the non-moving party here were, you know, were beyond that, and the district court evaluated the evidence, made factual findings, and we basically, unless they're clearly erroneous, we have to take those as the facts, right? Yes, you do, Your Honor. Okay. Yes. I just want to make sure I understand the procedural posture. Yep. Yep. I'd like to focus first, if I could, on what I think is the district court's principal legal error. So I'll put the record to one side. In ruling against the plaintiffs in this case, the district court held that they were required to prove by a preponderance of the evidence that each of the proposed modifications were in isolation effective. I think that was wrong in multiple ways. For starters, it disregards what has been this Court's burden-shifting framework since at least 1995, which is the Borkowski case. Can you tell me where the district court said that? Where it's – sure. So if you look at S.A. 58 as one example, the court said that the plaintiffs must show, quote, that it is more likely than not that the modifications would enable effective transportation. That's the kind of preponderance of the evidence standard that doesn't – is inconsistent with the prima facie light burden that this Court has repeatedly said applies to claims brought under the ADA. That has been true since 1995 in this Court's decision in Borkowski. It's also been true for this Court's decision in Dean. And I think most relevant for this case is this Court's decision in Roberts, which is the only Title III case in which this Court has looked at this burden-shifting framework. And what the Court said – I guess let me ask you this. I understand that the district court said that. But if you go to the very next sentence on 59, the district court said there is no credible proof in the record of the number of drivers with – I guess – are we pronouncing it waves or labs? We say waves. You say waves. Yeah. That would pick up passengers on a lift platform if access mode were to be turned on in non-access regions. And it talks then about the lack of proof being overwhelming. So even if we accept your view that the district court, that one sentence could be read to, in your view, misarticulate the standard, if the district court says that there is no credible proof in the record, isn't that another way of saying that the plaintiffs have failed even to satisfy their minimal burden of production? Yeah. Understood. So a couple of responses to that. If you look at Essay 59, which is exactly where Your Honor quoted, the district court there is not talking about the complete record evidence that existed in this case with respect to all the modifications or even with respect to the subclass that is up on appeal in front of this Court. That statement, Your Honor, refers only to the question of turning access mode on throughout the United States. It is not before this Court on appeal. And it doesn't take into account all of the record evidence that was either credited by the district court or that the district court overlooked about the way that these modifications work in combination. Well, I'm looking at the previous sentence. I guess it's the one that crosses 58 to 59. Plaintiffs offered no empirical support to tie the potential supply of waves in Westchester County to evidence of effective wave transportation via Lyft's app. Yes. Well, I guess I'm focused here at least on what I thought is your initial argument, that the district court was applying the wrong standard. But it looks to me like the district court is saying there's nothing here. And if there's no evidence, then that would be at least legally consistent with what I take it to be your view of the legal standard, which is the plaintiffs at least have this minimal burden of initial production. And if a judge says you have produced no evidence towards that, that would be a correct legal articulation of why you would fail, right? Yes. I don't think that is an accurate description of either what is in the record that the district court overlooked. Right. Now, that I get. Yeah. To say the district court is wrong, there was plenty of evidence there. Or, Your Honor, what it was doing there was assessing just one modification in isolation. And I think this is really key. What the plaintiffs have proposed here is not a series of isolated modifications, any one of which would necessarily accomplish what they were trying to seek here, which is reasonable modification. The plaintiffs were attempting to create a framework, concrete steps taken together that would have allowed them the opportunity to request a usable lift ride and receive one either from the natural supply of waves that exist in Westchester or through additional modifications that would boost supply. And the district court, in addition to applying a preponderance of the evidence standard, just did not consider these modifications in combination. It took them one by one. So your view is that it's an effective suggestion of effective modification only if all of them are considered? Or it's improper to deem it not effective unless they are all considered together?  Yes. They have to be taken in combination. And I think that is what we've cited cases to this court, and this court has recognized this. Modifications, they don't necessarily work one by one in any particular circumstance. And here, what the plaintiffs identified was that lift, where it offered wave access in other regions, New York City, Dallas, Philadelphia, didn't just turn on access mode. To create a meaningful opportunity for disabled riders to access lift, what it did was turned on access mode, offered bonuses to drivers, cross-dispatched, used what is called prioritization logic to help boost the supply of these vehicles. And what the plaintiffs sought here was the same kind of approach to the request for an effective modification. But just maybe one further point, and then I see that I'm down to my rebuttal time here. The standard for what the plaintiffs have to prove is very light. As this court has repeatedly emphasized, all they really need to do is identify concrete modifications, and then the burden shifts to the defendant to explain why those modifications are unreasonable. And the district court just did not adopt that approach and set the bar too high for the plaintiffs. I'll reserve the rest of my time for rebuttal. Thank you very much. Why don't we hear from counsel for the appellee, Attorney Wu. May it please the Court. Jeffrey Wu from Unger, Tulsa and Nolson on behalf of Defendant Appellee Lift. I would like to first address my friend's argument regarding the burden framework. And I think there's a way to cut through the arguments about burden, because the district court expressly found that lift had rebutted the burden on effectiveness, even if the burden had shifted to lift. And that is on page 59 of the district court's opinion. As the district court said, even if plaintiffs had joined by a preponderance of the evidence that turning on access mode would lead to the transportation requested by plaintiffs, defendant has offered proof that rebuts the initial burden and established the first proposed modification would be neither effective nor reasonable in cost. So this is not a situation like the Roberts case cited by plaintiffs in which the district court, after a bench trial, based its decision solely on its assessment of the plaintiff's evidence. That's at page 377 of the Roberts opinion. In this case, the district court told us exactly what you would have done if the burden shifted. And we know the outcome is the same, that the district court would have found that the proposed modifications are not effective because it would not lead to transportation. My friend has also argued that, well, this is only about the first modification, and the first modification has to work in combination with the others. But a thread running through the district court's thorough opinion is that a key dispositive defect in the plaintiff's modifications is that they would not create a supply of waves. A core problem with providing service, transportation, in wave vehicles on a ride-share platform is that there is very little or nonexistent supply of waves naturally. For a ride-share platform to work, there has to be a supply of drivers who own waves and who are willing to use them to get rides. There has to be a supply of riders who will make the right request for wave rides. And the drivers and the riders, in order to be matched so transportation occurs, will need to use the platform in the same area at the same time. And that is very hard to do unless there's a density of the population of users and drivers for the matching to take place. And the district court explained that on page 61 of its opinion, crediting the analysis of lift expert Dr. Reisman, who modeled the platform, how the platform would work, if the company were to rely on an organic supply of wave vehicles to support access mode. And he found that virtually zero rides would result. And the district court discussed Dr. Reisman's analysis on pages 45 through 47 of his opinion. And so without a wave, without a supply of waves, none of these modifications would create transportation. My friend has also referenced lift's experience in the access regions like New York City. The access regions where lift has access mode turned on are regions where lift has spent $13 million a year in order to create a supply of waves, including by partnering with third-party companies who would supply the vehicles, hire W2 drivers as employees to give rides on the platform. That modification plaintiffs are not proposing here. Rather, they're proposing that lift simply turn on access mode. And that is something that has never resulted in successful transportation in any market. Indeed, the district court's decision accords with that of every court that has addressed this problem, including the Ninth Circuit in Crawford and two district courts in California, the district court in Crawford and also in the IORC case all cited in our briefs. And I welcome the panel's questions on the other issue. We're happy to listen, but don't have any questions at the moment. In that case, I thank the panel for your time, and we would respectfully ask that the court affirm the judgment of the district court. Thank you very much. Mr. Wessler, you have reserved two minutes for rebuttal if there's anything that you would like to add. Thank you, Your Honor. Just a few very brief points in rebuttal. You heard my friend on the other side focus almost exclusively on what the district court did with respect to only one of the modifications at issue here, which is turning on access mode. If I leave you with nothing else, it's this. This case is not about just turning on access mode. The plaintiffs tried to identify a series of steps that lift could take that it had taken elsewhere, and the district court simply disregarded the other modifications that the plaintiffs were proposing and instead considered each of them, to the extent it even considered them, simply in isolation. But that isn't the way the ADA is designed to work. The plaintiffs are not put to a preponderance of the evidence standard to prove that each and every one of their proposed modifications must achieve some kind of standard that is above and beyond whatever they can know when they are bringing the lawsuit. Instead, all they're required to do, at least at their initial stage, is come forward with a set of concrete possible options that a defendant could take to comply with its obligations under the ADA. And it is for the defendant to then turn around and rebut those modifications to show that they are taken together unreasonable because they impose too high a cost or are otherwise infeasible. And that just never happened here. And for those reasons, this Court should reverse. Thank you. Thank you both very much for your arguments. We will, as with all the cases today, take the matter under advisement.